UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARTIN J. WALSH, Secretary of Labor, )<br>United States Department of Labor, )<br>200 Constitution Avenue, N.W. )<br>Washington, D.C. 20210, )<br> )<br>            Plaintiff, )<br> )<br>    v. )<br> )<br>AMERICAN FEDERATION OF GOVERNMENT )<br>EMPLOYEES, AFL-CIO, )<br>80 F Street, N.W. )<br>Washington, D.C. 20001 )<br> )<br>            Defendant. )<br> ) | Civil Action No. 21cv1125 |

**COMPLAINT**

Plaintiff Martin J. Walsh, Secretary of Labor, by the undersigned, alleges as follows:

**NATURE OF THE CASE**

1.      This action is brought under Title IV of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA" or the "Act"), 29 U.S.C. §§ 481-483, for a judgment declaring that the October 10, 2020 election conducted by the American Federation of Government Employees ("Defendant") for the offices of National Vice President, District 4, and Fair Practices Affirmative Action Coordinator, District 4, is void, and directing Defendant to conduct new nominations and a new election for the offices of National Vice President, District 4, and Fair Practices Affirmative Action Coordinator, District 4, under Plaintiff's supervision, and for other appropriate relief.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 29 U.S.C. § 482(b),

28 U.S.C. § 1331, and 28 U.S.C. § 1345.

3.      This Court may exercise personal jurisdiction over Defendant because Defendant

maintains its principal office in this District.

4.      Venue lies in this district pursuant to 29 U.S.C. § 482(b) and 28 U.S.C. § 1391(b).

## PARTIES

5.      Plaintiff Martin J. Walsh is the duly appointed Secretary of Labor, United States

Department of Labor. Plaintiff is authorized to bring this action under section 402(b) of Title IV

of the Act, 29 U.S.C. § 482(b).

6.      Defendant is, and at all times relevant to this matter has been, an unincorporated

association maintaining its principal office in and residing within the District of Columbia,

within the jurisdiction of this District.

## FACTUAL ALLEGATIONS

7.      Defendant is, and at all times relevant to this action has been, a national labor

organization engaged in an industry affecting commerce within the meaning of sections 3(i) and

3(j) and 401(a) of the Act, 29 U.S.C. §§ 402(i) and (j) and 481(a).

8.      Defendant represents private sector and government employees throughout the

United States.

9.      At all relevant times, Defendant was governed by the Constitution of the

American Federation of Government Employees ("AFGE"), AFL-CIO, adopted at the Forty-

First AFGE National Convention in August 2018 ("AFGE Constitution").

10.     Defendant's organization includes twelve geographic districts.

11.    The AFGE Constitution, Article V, Section 3, provides in part, "The twelve districts are comprised as follows: . . . 4th District—Maryland, North Carolina, Virginia and West Virginia[.]" (hereinafter "District 4").

12.    District 4 includes members of 62 AFGE-affiliated local labor organizations (constituent local unions) in Maryland, North Carolina, Virginia, and West Virginia.

13.    AFGE Local 449 is a constituent local union affiliated with Defendant and located within District 4.

14.    AFGE Local 1923 is a constituent local union affiliated with Defendant and located within District 4.

15.    The AFGE Constitution, Article V, Section 3, provides in part, "Between sessions of National Conventions the National President, National Secretary-Treasurer (NST), National Vice President for Women and Fair Practices, and twelve National Vice Presidents (NVP) shall constitute the National Executive Council (NEC)."

16.    The AFGE Constitution, Article VII, is titled, "Officers."

17.    The AFGE Constitution, Article VII, Section 1(c), provides, "All National Vice Presidents, Fair Practices Affirmative Action Coordinators, and National Women's Advisory Coordinators will be elected by secret ballot, by majority votes cast within each respective district, and will be installed at the caucus after their election."

18.    The AFGE Constitution, Article VIII, is titled, "Election of Officers."

19.    The AFGE Constitution, Article VIII, Section 2(a), provides, "National Vice Presidents, Fair Practices Affirmative Action Coordinators, and National Women's Advisory Coordinators are to be nominated and elected at a district caucus to be held within each

respective district subsequent to April 30 and prior to June 1 of every third year beginning in 1990."

20.     One of Defendant's officers is the National Vice President for its 4th District ("National Vice President, District 4").

21.     Another of Defendant's officers is the Fair Practices Affirmative Action Coordinator for its 4th District ("Fair Practices Affirmative Action Coordinator, District 4").

22.     The AFGE Constitution, Article VIII, Section 2(d), provides in part regarding district caucuses, including District 4's caucuses, "The number of caucus delegates a local is entitled to is determined in the same manner as National Convention delegates under Article VI, Section 2."

23.     The AFGE Constitution, Article VI, Section 2, provides in part regarding National Convention delegates, "Locals having a membership of 100 or less shall be entitled to one delegate; 101-200 members, two delegates; 201-300 members, three delegates; 301-400 members, four delegates; 401-500 members, five delegates; 501-750 members, six delegates; 751-1,000 members, seven delegates; 1,001-2,000 members, eight delegates; and 2,001-3,000, ten delegates. Locals having a membership over 3,000 members are entitled to an additional delegate for every additional 1,000 members."

24.     The AFGE Constitution, Article VIII, Section 2(e), provides regarding district caucuses, including District 4's caucuses, "Standard credential forms must be sent in advance of caucuses to all locals in all districts by the NST for insertion of delegates' names and signatures for the local president and secretary or secretary-treasurer."

25. The AFGE Constitution, Appendix A, Part I, Section 6(a), provides in part, "Delegates to district caucuses, council meetings, or the AFGE National Convention must be elected by secret ballot of the members on whose behalf they will serve as delegates."

26. The AFGE Constitution, Appendix A, Part I, Section 6(b), provides in part, "Officers of the appropriate AFGE entity, by virtue of their election to office, may serve as delegates, if prescribed by the applicable constitution."

27. The AFGE Constitution, Appendix A, Part I, Section 6(c), provides in part, "In the election for delegates, members will be afforded the opportunity to determine the number of delegates, up to the full entitlement as provided by the national or council constitution involved."

28. At all relevant times, AFGE Local 449 was governed by the AFGE Constitution.

29. At all relevant times, AFGE Local 1923 was governed by the AFGE Constitution.

30. At all relevant times, Local 1923 was further governed by the Local 1923 Constitution and Bylaws, approved August 15, 2016 ("Local 1923 Bylaws").

31. The Local 1923 Bylaws, Section 36(a), provide in part, "The President by virtue of election to office is automatically a delegate to all . . . district caucuses . . . Members of the Executive Board, by virtue of their election to the offices, are automatically delegates and alternate delegates in the following order:"

DELEGATES

1. President
2. Executive Vice President
3. Treasurer
4. Secretary
5. Sergeant-at-Arms
6. First Vice President
7. Second Vice President
8. Fifth Vice President
9. Eighth Vice President
10. Ninth Vice President

11. Twelfth Vice President
12. Twenty-Fifth Vice President
13. Thirtieth Vice President
14. Thirty-Second Vice President
15. Thirty-Third Vice President

32.     In 2017, AFGE Local 1923 elected its Executive board by secret ballot vote of its membership ("2017 AFGE Local 1923 election").

33.     In the 2017 AFGE Local 1923 election, Bobby Shackleford was elected as AFGE Local 1923's Thirty-Second Vice President ("VP").

34.     Prior to February 21, 2020, Defendant scheduled its District 4 caucus for May 2020 ("2020 District 4 caucus").

35.     On or about February 21, 2020, Defendant sent its District 4 constituent local unions delegate credential forms due to be returned before the 2020 District 4 caucus.

36.     AFGE Local 449 was entitled to 6 delegates to the 2020 District 4 caucus.

37.     AFGE Local 1923 was entitled to 13 delegates to the 2020 District 4 caucus.

38.     On March 11, 2020, AFGE Local 1923 submitted credentials to Defendant's District 4 for the following AFGE Local 1923 officers to serve as delegates to the 2020 District 4 caucus: President Anita Autrey, Executive Vice President Shelly Washington, and Secretary Vincent Tumminello.

39.     Defendant rescheduled its 2020 District 4 caucus due to the coronavirus pandemic.

40.     On August 6, 2020, an employee of Defendant, Carolyn Carter, emailed all local presidents within District 4 to inform them that the 2020 District 4 caucus was rescheduled for October 10, 2020, in Baltimore, Maryland. The email attachments included a notice of nominations and election, the 2020 Amended District Caucus Rules, delegate credential forms, and a credential checklist.

6

41.     Defendant's 2020 Amended District Caucus Rules, Rule 3(b)(2), provided in part:

> In a situation where a local has elected its full complement of delegates, but not all delegates appear at the Caucus, those who are seated are entitled to a proportional share of the local's full entitlement of votes . . . the voting strength is divided equally among those properly elected delegates participating in the caucus.

42.     Defendant's 2020 Amended District Caucus Rules, Rule 7(f), provided: "All credentials and copies of required documents must be received by the NVP or postmarked at least 30 days prior to the Caucus, except in extraordinary circumstances, when the Caucus Credentials Committee may waive the 30 day period."

43.     The September/October 2020 issue of Defendant's official membership publication, The Government Standard, page 13, listed "Revised Dates Set for District Caucuses," including "Credentials due Sept. 10" for the 2020 District 4 caucus.

44.     On August 31, 2020, Shackleford, VP of AFGE Local 1923, emailed the following to Autrey, president and treasurer of AFGE Local 1923:

> When will the credentials for the D4 Caucus be sent out I would like to participate in the Caucus.

45.     Thereafter, on August 31, 2020, Autrey responded by email to Shackleford, writing in part:

> Credentialing happened months ago when the caucus was supposed to take place in May and three people were budgeted to go, myself, EVP Washington and Secretary Tumminello, Bobby.
>
> Now due to the COVID-19 Pandemic only myself and Secretary Tumminello are attending to help facilitate Social Distancing and neither of us will be staying overnight. Vince is also serving as a member of the Credentialing Committee.

46.     The AFGE Constitution, Appendix A, Part I, Section 6(d), provides in part, "A decision by an entity to authorize funds for less than the full number of delegates elected does not preclude the remaining delegates from participating at their own expense as delegates."

47.     Thereafter, on August 31, 2020, Shackleford responded by email to Autrey, writing: "How will I get to cast the vote on behalf of my members."

48.     Defendant's District 4 continued accepting delegate credentials for the 2020 District 4 caucus through September 14, 2010.

49.     On September 25, 2020, Autrey emailed Shackleford in response to his August 31, 2020 emails, in part, "Our Local votes as a block and I will cast our votes accordingly."

50.     On October 10, 2020, Defendant conducted its 2020 District 4 caucus, including elections for National Vice President, District 4, and Fair Practices Affirmative Action Coordinator, District 4.

51.     For the National Vice President, District 4, position, there was an initial election and a runoff election during the 2020 District 4 caucus.

52.     Autrey and Tumminello were the only delegates from AFGE Local 1923 that attended the 2020 District 4 caucus.

53.     AFGE Local 1923 was entitled to 5,610 votes at the 2020 District 4 caucus.

54.     AFGE Local 449 was entitled to 580 votes at the 2020 District 4 caucus.

55.     Defendant's District 4 Election Committee distributed ballots to the delegates participating in the 2020 District 4 caucus.

56.     Defendant's District 4 Election Committee distributed 934 ballots to the delegates from AFGE Local 449.

57.     Defendant's District 4 Election Committee distributed 5,610 ballots to the delegates from AFGE Local 1923.

58.     During the 2020 District 4 caucus, Tumminello signed a "Form V-2_District Caucus Voting Authorization Form" authorizing Autrey to cast his 2,805 votes in the officer election.

59.     Thereafter, during the 2020 District 4 caucus, Autrey cast all 5,610 of AFGE Local 1923's votes.

60.     Also during the 2020 District 4 caucus, as relevant here, AFGE Local 449 cast 934 votes in two elections: the Fair Practices Affirmative Action Coordinator, District 4, race, and the initial race for National Vice President, District 4.

61.     AFGE Local 449 cast 580 votes in the runoff election for National Vice President, District 4.

62.     The winning candidate for Fair Practices Affirmative Action Coordinator, District 4, won by 1,994 votes at the 2020 District 4 caucus.

63.     In the initial election for National Vice President, District 4, during the 2020 District 4 caucus, there were three candidates who received the following vote counts: Al Burgess received 11,258 votes; Dan Doyle received 10,083 votes; and Sheila Elliott received 2,752 votes.

64.     In the runoff election for National Vice President, District 4, during the 2020 District 4 caucus, there were two candidates who received the following vote counts: Dan Doyle received 12,299 votes and Al Burgess received 11,442 votes.

65.     By letter dated October 14, 2020, complainant, Al Burgess, a member in good standing of Defendant, filed a protest with Defendant's District 4 Election Committee.

66.     By letter dated October 28, 2020, Defendant's District 4 Election Committee wrote to Burgess, in part, "the election committee has extended the deadline for issuing a decision in your protest by 30 days. Accordingly, the election committee will issue a response to your protest by November 27, 2020."

67.     Defendant's District 4 Election Committee did not issue a decision on Burgess' protest prior to November 28, 2020.

68.     By email dated November 28, 2020, Burgess filed an appeal with AFGE National President Everett Kelley.

69.     Defendant did not issue a decision on Burgess' November 28, 2020 appeal prior to January 15, 2021.

70.     Having exhausted the remedies available without receiving a final decision for three calendar months after his October 14, 2020, invocation, Burgess timely filed his complaint with the Secretary of Labor on January 25, 2021, within the one calendar month required by section 402(a) of the Act. 29 U.S.C. § 482(a).

71.     By letter signed February 23, 2021, Defendant agreed that the time within which Plaintiff may bring suit with respect to Defendant's aforesaid election be extended to April 26, 2021.

72.     Pursuant to section 601 of the Act, 29 U.S.C. § 521, and in accordance with section 402(b) of the Act, 29 U.S.C. § 482(b), Plaintiff investigated the complaint and, as a result of the facts shown by the investigation, found probable cause to believe that (1) a violation of Title IV of the Act, 19 U.S.C. §§ 481-484, had occurred in the conduct of Defendant's October 10, 2020, elections for National Vice President, District 4, and Fair Practices Affirmative Action Coordinator, District 4; (2) the difference in votes was close enough that the violation may have

affected the outcome of the elections for National Vice President, District 4, and Fair Practices

Affirmative Action Coordinator, District 4; and (3) such violations had not been remedied at the

time of the institution of this action.

## COUNT 1
## 29 U.S.C. § 481

73.     Paragraphs 1-72 are realleged and incorporated herein by reference.

74.     Section 401(c) of the Act, 29 U.S.C. 481(c), provides that "[a]dequate safeguards

to insure a fair election shall be provided" by labor organizations in the conduct of their officer

elections.

75.     Section 401(f) of the Act, 29 U.S.C. § 481(f), states that: "When officers are

chosen by a convention of delegates elected by secret ballot, the convention shall be conducted

in accordance with the constitution and bylaws of the labor organization insofar as they are not

inconsistent with the provisions of this title."

76.     Defendant violated sections 401(c) and (f) of the LMRDA, 29 U.S.C. § 481(c),

(f), by failing to follow its constitution and bylaws and failing to provide adequate safeguards to

insure a fair election when it granted AFGE Local 449 the incorrect number of votes to cast in

the election.

77.     In further violation of section 401(f) of the Act, Defendant failed to follow its

constitution and bylaws when it improperly allocated AFGE Local 1923's votes to two delegates,

after Local 1923 improperly denied a third, duly-elected delegate's request to attend the 2020

District 4 caucus.

78.     The above violations of sections 401(c) and (f) of the LMRDA, 29 U.S.C.

§ 481(c), (f), may have affected the outcome of the election for the offices of National Vice

President, District 4, and Fair Practices Affirmative Action Coordinator, District 4, in the

October 10, 2020 election, conducted at the 2020 District 4 caucus.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment in favor of Plaintiff and

against Defendant as follows:

(a)  declaring Defendant's election for the offices of National Vice President, District 4,

and Fair Practices Affirmative Action Coordinator, District 4 to be null and void;

(b) directing Defendant to conduct a new election for the offices of National Vice

President, District 4, and Fair Practices Affirmative Action Coordinator, District 4, under the

supervision of Plaintiff;

(c)  for the costs of this action; and

(d)  for such other relief as may be appropriate.

\*     \*     \*

Respectfully submitted,

BRIAN BOYNTON
Acting Assistant Attorney General

CHANNING D. PHILLIPS, D.C. BAR #415793
Acting United States Attorney

BRIAN HUDAK
Acting Chief, Civil Division

By:    /s/ *Darrell C. Valdez*
DARRELL VALDEZ, D.C. Bar No. 420232
Assistant United States Attorney
555 4th Street, NW, Civil Division
Washington, DC 20530
(202) 252-2507
Darrell.Valdez@usdoj.gov

 OF COUNSEL:

ELENA S. GOLDSTEIN
Deputy Solicitor of Labor

BEVERLY DANKOWITZ
Associate Solicitor

ELEANORE I. SIMMS
Counsel for Labor-Management Policy

LINDSY LEE
Senior Attorney

U.S. Department of Labor